GREEN v. GILBERT & a.

In a suit by a riparian proprietor for damage done by sawdust brought to his land by the stream from the defendant's mill, the question whether the defendant's use of the stream for carrying off the dust is reasonable or not is a question of fact depending upon the circumstances of the case, including the purposes old and new for which the stream is used by each party, the amount of the defendant's benefit, the amount of the plaintiff's damage, and all the causes of the damage.

CASE, for damage done by sawdust discharged from the defendants' mill into Dead river, and carried down by the stream to the plaintiff's land.    The defendants' mill is driven by steam, and its sawdust is carried by a belt and box to the river.    In the river, at the lower end of the plaintiff's land, is a dam, the gate of which, before 1873, was generally closed during the winter, but not so as to flow the upper end of his land.    In 1873-4-5 he lowered the outlet of his pond for the purpose of drainage, raised his land in beds, made ditches, removed stumps and roots, put in under-drains, planted about sixty acres with cranberry vines, and closed his gate to protect the vines from frost, and kept it closed from October to July, holding the water further back than it had been held before, so that the sawdust was deposited on his land instead of being carried off by the stream as it had formerly been.

Subject to the plaintiff's exception, witnesses testified that in summer, when the plaintiff's dam was open, the sawdust was kept in the channel of the river, and passed off through his gate; and when his gate was closed, water was thrown back in his ditches, and the velocity of the stream was diminished by his improvements and use of the water.    Subject to the plaintiff's exception, a witness testified that on one occasion, before 1873, the plaintiff, coming into the defendants' mill, then owned by one Wheeler, commended the ingenuity of Wheeler's method of carrying off the sawdust to the river by the belt and box, and said nobody else would have thought of it, anybody else would have wheeled it out.    One Libby, a witness called by the plaintiff, testified he had operated a steam

saw-mill like the defendants' in Gorham, ten or twelve years; had burned two thirds of the sawdust in the furnace under the two boilers of the mill, and with another boiler could consume it all; the sawdust was carried to the fire by an endless chain; spruce sawdust makes good fuel. He testified fully as to the expense of burning it, the alteration of an ordinary furnace necessary for burning it, and as to all material facts within his knowledge, showing, by his experience, that it is practicable to use the sawdust of such a steam-mill as the defendants' for the fuel of the mill, when it is chiefly spruce. The plaintiff excepted to the exclusion of the witness's opinion that such a use is practicable. The court gave the jury the instructions that were held correct in *Hayes* v. *Waldron*, 44 N. H. 580, and, subject to the plaintiff's exception, declined to instruct them that upon the question of reasonable use of the river they could not consider the fact that the profits of lumber manufacture were small, and a small or reasonable expense of disposing of the sawdust would render the defendants' business less profitable than it had been. Verdict for the defendants.

*Twitchell & Evans* and *Ladd & Fletcher*, for the plaintiff.

*Ray, Drew & Jordan*, for the defendants.

DOE, C. J. The evidence that the deposit of the sawdust on the plaintiff's land was caused by his improvement of his land and his use of his dam, was admissible. The use made of the stream by each party, and all the causes of the damage, were facts, to be considered on the question whether the defendants' use was reasonable. *Hayes* v. *Waldron*, 44 N. H. 580.

From the plaintiff's commendation of the ingenious contrivance for conveying the sawdust to the river, before 1873, accompanied by no complaint of injury, might be implied his admission that such a disposition of the dust was then a reasonable use of the stream. And what was admitted to be reasonable before 1873 was evidence on the question of subsequent reasonableness. The plaintiff's new use of his own land and the stream in 1873 might tend to show that the defendants' previous and unchanged use became unreasonable in 1873: but the reasonableness of the defendants' previous use was not rendered immaterial as evidence, by the change in the plaintiff's use. Whether the defendants' use, previously reasonable, became unreasonable in 1873 was a question of fact depending upon the circumstances of the case, including the defendants' benefit and the plaintiff's damage. *Hayes* v. *Waldron*, *supra*. The plaintiff's admission of the propriety of the defendants' use before 1873 would tend to reduce the broad issue of reasonableness to the narrower question whether it was reasonable that the defendants' old use should be discontinued on the introduction of the plaintiff's new one.

There would have been no error of law in allowing Libby to testify that that could be done which he testified he had done; but his opinion would have added nothing to the testimony he gave.

The requested instruction was properly refused. *Hayes* v. *Waldron, supra.*

*Judgment on the verdict.*

BINGHAM and SMITH, JJ., did not sit: the others concurred.